Judgment reversed and defendants discharged. Settle order on notice.

---

ADAMS-FLANIGAN COMPANY, Appellant, *v.* CHARLES KLING and Others, Respondents, Impleaded with CHARLES HIRTZ and Others, Defendants.

First Department, December 2, 1921.

Landlord and tenant — summary proceedings — building leased for saloon purposes only — summary proceeding by assignee of landlord on ground that lease was terminated by operation of law when national prohibition became effective — error to exclude evidence of oral agreement by landlord to permit tenant to use premises for other purposes — estoppel of and waiver by landlord, prior to assignment of lease, of right to claim that it was terminated by operation of law — waiver by landlord of provision of lease with respect to use of premises for saloon purposes only.

In summary proceedings by the assignee of the landlord to remove the tenant and subtenants from possession under a lease providing that the store on the premises should not be used for any other purpose " than saloon and the sale of lager beer," it appeared that after the Eighteenth Amendment to the Federal Constitution and the National Prohibition Act took effect on January 29, 1920, but prior to the assignment of the lease by the landlord, the building was altered so that it might be used as a store and on the date of the assignment there was no trace of the saloon left; that thereafter the original landlord received rent for the month of February; that the rent for the month of April was tendered but refused; that the assignee of the landlord, the petitioner herein, after the rent

for the month of March had been received, notified the tenant that the lease had been terminated by operation of law, and that the tenancy was, therefore, one from month to month and that possession would be required on the first of April.

*Held,* that it was error for the court to exclude evidence offered by the tenant that prior to the assignment of the lease by the original landlord the latter had agreed, orally, that the tenant might use the premises for purposes other than those specified in the lease, as it was competent for the landlord to waive any rights it might have to insist that the premises should be used only for the purposes specified in the lease and the right to re-enter when that became unlawful.

If the landlord waived its right to re-enter, its assignee, which took the assignment twenty-six days after the use for saloon purposes had become unlawful and found the tenant still in possession and altering the premises for lawful business purposes, was put upon inquiry and chargeable with knowledge of the facts and circumstances under which the tenant so remained in possession.

The original landlord prior to the assignment of the lease to the petitioner was estopped from claiming and had waived any right it had to re-enter or to claim that the lease was terminated by operation of law, and by accepting rent under the lease for the month of February, after the Eighteenth Amendment to the Federal Constitution and the National Prohibition Act had taken effect, it waived the remaining condition of the lease with respect to the use of the premises for saloon purposes only, and, therefore, its assignee, the petitioner herein, cannot maintain summary proceedings.

APPEAL by the plaintiff, Adams-Flanigan Company, from a judgment and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of said court on the 10th day of March, 1921, affirming a judgment of the Municipal Court of the City of New York, Borough of The Bronx, Second District, in favor of the defendants.

*Cyrus C. Miller,* for the appellant.

*Joseph Diehl Fackenthal* [*Hugo H. Ritterbusch,* attorney], for the respondents.

LAUGHLIN, J.:

On the 15th of August, 1910, the J. & M. Haffen Brewing Company, a domestic corporation, executed a lease in writing to the respondent Kling of certain premises consisting of the land and building at the northeast corner of One Hundred and Forty-ninth street and Third avenue, borough of The

Bronx, New York city, known as 2856 Third avenue, for the period of thirteen years, nine and one-half months from that date at a yearly rental of $5,000; and by the same lease, certain premises in the rear of the adjacent premises known as 2858 Third avenue, which were then used as a dining room or sitting room appurtenant to the premises so leased as 2856 Third avenue, were leased to the same tenant for eight years, eight and one-half months from date; and on the 2d day of March, 1911, the landlord executed an extension of the lease of the latter premises for the period of five years longer. Section IX of the lease provides as follows:

" IX. And the said tenant doth covenant and agree with the said lessor· that the tenant will not use or sell upon the said premises any other lager beer brewed in the State of New York or New Jersey than that of the J. & M. Haffen Brewing Company and the lessor agrees that the price to be charged the tenant for such lager beer shall be the regular market price less a discount of thirty-five percent, and the store of said premises shall not be used or occupied for any other purpose than saloon and the sale of lager beer."

The tenant entered into possession under these leases and has ever since continued in possession thereunder and under the extension of the second lease and used them as a saloon and in connection with the saloon until the Eighteenth Amendment to the Federal Constitution and the National Prohibition Act (41 U. S. Stat. at Large, 305, chap. 85; Id. 308, chap. 85, tit. 2, § 3) became of force on the 29th of January, 1920 (40 U. S. Stat. at Large, 1941, 1942; 41 id. 322, chap. 85, tit. 3, § 21); and thereafter he assigned his leases to the Burnee Corporation. Prior to the assignment by the landlord to the petitioner, as hereinafter stated, it removed the bar fixtures and proceeded to alter the premises for use as a store by constructing partitions therein, and on the date of the assignment there was no " trace " of the saloon left. The landlord remained the owner of the leases and received the rent thereunder from the tenant until the 11th of February, 1920, when it assigned the leases to the petitioner. The rent was payable in monthly installments on the first day of each month in advance, and the tenant paid rent for the months of January and February, 1920, to his original landlord prior to the assignment by the landlord

to the petitioner. The tenant offered to show a parol agreement between him and the authorized representative of the landlord prior to the assignment of the lease to the petitioner, by which the landlord consented that the petitioner might use the premises for other purposes than the purpose specified in the lease. On the objection of the petitioner that evidence was excluded. The court was clearly in error in so ruling. It was plainly competent for the landlord to waive any rights it might have to insist that the premises should be used only for the purposes specified in the lease and to re-enter when that became unlawful; and if it waived such rights, its assignee, which took the assignment twenty-six days after the use of the premises for saloon purposes as theretofore, had become unlawful, and found the tenant still in possession and altering the premises for lawful business purposes, was put upon inquiry and chargeable with knowledge of the facts and circumstances under which the tenant so remained in and was proceeding to use the premises for other purposes. (*Phelan* v. *Brady,* 119 N. Y. 587.) The landlord would be estopped by a parol agreement on its part permitting the tenant to remain in and waiving the provisions of the lease which had become unlawful and accepting rent *under the lease* after January 29, 1920, from claiming that the lease had terminated by operation of law (See *Conger* v. *Duryee,* 90 N. Y. 594); and I think that regardless of whether or not the covenant with respect to use ran with the land — a point upon which no opinion need now be expressed — it is equally clear, on the facts here presented, that the petitioner took no greater rights than the landlord had, and if the landlord could not have maintained the summary proceeding, the petitioner cannot. The record contains no evidence of any agreement or negotiations between the landlord and tenant, prior to the assignment of the lease by the landlord to the petitioner, with respect to the value of the use and occupation of the premises; but the tenant testified, and his testimony is uncontroverted, that he paid the *rent* for the month of February to the landlord. On the 2d of February, 1914, the brewing company, the landlord, assigned its business to the Ruppert Company and thereafter the tenant was supplied with beer by the Ruppert Company, without, so far as appears,

any agreement between him and the landlord with respect thereto. According to the testimony of the tenant, which the court presumably found to be true, on the last day of February, 1920, he mailed a check for the *rent* for the month of March inclosed with a letter to the petitioner, and the petitioner retained and collected the check, and on the evening of the first of March he received a notice from the petitioner, dated February twenty-seventh, to the effect that it had succeeded to the rights of his landlord and that the leases had become void by operation of law and that he was a tenant from month to month, and that it had elected to terminate the tenancy on the first of April, at which time it required him to remove from the premises. On the sixth of March the petitioner wrote the tenant drawing attention to the said notice and admitting the receipt of the check for the *rent* for the month of March, and stating that it assumed that he had acquiesced in its notice that he was a tenant from month to month, and that accordingly it accepted the check as the rent for the month of March. On the eleventh of March the tenant wrote the petitioner repudiating its claim that he was a tenant from month to month and that by the notice his tenancy would terminate April 1, 1920, and insisting that he sent the check for the *rent* reserved for March under the two leases which he claimed still were in full force and effect. That check is not in evidence and it does not appear whether it was used before or after the petitioner received the tenant's letter of March eleventh. The record, however, does contain an exhibit produced on the trial by the attorney for the tenant, purporting to be a letter from the petitioner's attorney to it suggesting that it write the tenant a letter in the form therein set forth, which is to the effect that the tenant's letter of March eleventh was an afterthought and that the landlord could not at that time accept a direction which changed the method of application of the check, and that it had already credited the amount of the check to him as the rent for the month of March as a tenant from month to month. The tenant tendered to the petitioner according to the leases, the rent for the month of April, but it refused to accept the same.

I am of opinion that this evidence shows that the landlord, prior to its assignment of the leases to the petitioner, had waived any right it had to re-enter or to claim that the leases were terminated by operation of law; and that by accepting the rent for the month of February, after the Eighteenth Amendment and National Prohibition Act had taken effect, it waived the remaining condition of the lease with respect to the use of the premises for saloon purposes only. The other provisions with respect to the sale of the landlord's beer on the premises had been waived long prior thereto. If the landlord intended to claim that the leases were terminated by operation of law, since the sale of beer and intoxicating liquors, which was plainly contemplated by the provisions of the lease with respect to the use of the premises for saloon purposes only, was prohibited by the Eighteenth Amendment and the National Prohibition Act, it should have asserted its claim promptly and should not have lulled the tenant into the belief that it acquiesced in his remaining in possession under the leases and using the premises for another lawful purpose, as it plainly did by accepting the rent for the month of February *as rent* under the leases and without any agreement or understanding that the monthly rent reserved in the leases was the fair monthly value of the use and occupation of the premises under the indefinite tenure of a lease from month to month; and, as already observed, the petitioner, in the circumstances, took subject to the waiver by the landlord of the limitation of the use of the premises to the purposes of a saloon. It becomes unnecessary, therefore, on this record, to decide whether the leases would have been terminated by operation of law, if it were not for the evidence of waiver and estoppel.

It follows that the determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Determination affirmed, with costs.