George Starke, J.
In this holdover proceeding the landlord seeks to evict the tenant on the ground that the tenant has violated a substantial obligation of the tenancy by placing signs in the window in contravention of the lease.
There is no question that the tenant did not obtain the landlord’s consent and therefore violated that portion of paragraph 38 of the lease which reads as follows: “ The Tenant may, however, use and display such non-illuminated signs, posters, placards or the like, which shall be visible to pedestrians, to carry on the business described in paragraph 2 of this lease as the Landlord may approve, which approval shall not be unreasonably withheld.”
The landlord did not seek to have the signs removed by obtaining injunctive relief, although it did pursue the injunction remedy in another proceeding in order to obtain access to the tenant’s premises to make repairs. It was pointed out in Emrite Realty v. Neal (196 N. Y. S. 2d 883) that the impact of a holdover proceeding seeking the ouster of a tenant and resulting in a forfeiture of the tenancy cannot be compared with the milder form of injunctive relief. The court therein further stressed that while courts of equity are careful in granting injunctions, it is important that greater care be exercised in summary proceedings where forfeitures are involved. The court held that, although there was a breach of the lease, the evidence was insufficient to establish that the violation was substantial enough to call for the forfeiture of the lease. It suggested that upon a fuller record the landlord might establish a case for injunction.
Forfeitures are not favored in equity (3 New York Law of Landlord and Tenant, § 998), and technicalities will not be permitted to work injustice or oppression (98 Delancy St. Corp. v. Barocas, 82 N. Y. S. 2d 802, affd. 275 App. Div. 651). Forfeiture should not be sought on a narrow ground; the claimed violation must be substantial in order to call for forfeiture (Matter of Kearns v. Barney’s Clothes, 38 Misc 2d 787). Where the alleged violation is of a trivial and inconsequential nature, it should not be the basis of a forfeiture of a long-term lease (Madison Stores v. Enkay Sales Corp., 207 Misc. 1091). In order to obtain a final judgment of eviction against a tenant, the landlord is required to prove that the breach of the lease is a violation of a substantial obligation of the tenancy (Fairchild Inves *665 tors v. Cohen, 43 Misc 2d 39; Mutual Redevelopment Houses v. Hanft, 42 Misc 2d 1044; Sigsbee Holding v. Canavan, 39 Misc 2d 465; Jerome Realty Co. v. Yankovich, 35 Misc 2d 183; 940 St. Nicholas Ave. Corp. v. Grant, 35 Misc 2d 165; Stern v. Carroll. 28 Misc 2d 507; Taylor v. Teller, 28 Misc 2d 508; Parker v. Johnson, 26 Misc 2d 31; Parkside Development Co. v. McGee, 21 Misc 2d 277; Zalaznick v. Imbembo, 35 Misc 2d 164; Rental Realty Corp. v. Lawrence, 14 Misc 2d 1070; Stern v. Harrold, 12 Misc 2d 73; Kon v. Miah, 11 Misc 2d 152; 974 Realty Corp. v. Ledford, 9 Misc 2d 240; Hardav Realty Corp. v. Donahue, 8 Misc 2d 951; Smith Real Estate v. Byrne, 3 Misc 2d 559; Cabrini Realty v. Newman, 237 N. Y. S. 2d 970; Kingsway-14th Bldg. Corp. v. Flickstein, 234 N. Y. S. 2d 812; Lansis v. Meklinsky, 10 A D 2d 649; Gilbert v. Becker, 142 N. Y. S. 2d 888; Matter of Sanfilippo v. Coster, 91 N. Y. S. 2d 738, app. dsmd. 100 N. Y. S. 2d 144).
The question presented is whether the violation is substantial enough to justify so drastic a remedy as the eviction of the tenant. One must ask: “ Is the violation of real substance ? Is it important, material and consequential? Is the violation sufficiently serious in character to warrant the tenant’s ouster and a forfeiture of the lease? ” All the physical facts and surrounding circumstances must be examined. Other factors besides good faith must be considered. One should not lose sight of the fact that equitable relief in the form of an injunction may be available. Keeping in mind that the law abhors forfeitures, consideration must also be given to the fact that a long-term lease is involved.
The landlord here leans heavily on Bernstein v. Bernstein, 214 App. Div. 790 (lower court opinion reported in 210 N. Y. S. 539), where the Appellate Division reversed the trial court (Cabswell, J.), which had held that the placing of the sign was too insubstantial in nature to warrant so drastic a remedy as a forfeiture of a long-term lease. A check of the record reveals that the Appellate Division reversed by a three-to-two vote, but did so on another ground entirely. In deciding that the defendant deliberately and willfully violated the lease provision against placing signs on the building, the court held that the defendant’s acts were violative of the covenant prohibiting assignment of the lease or the subletting the premises or a part thereof. The Court of Appeals, in affirming in 243 N. Y. 559, held that the covenant of subletting without the written consent of the landlord was breached.
At any rate, assuming the landlord to be correct in its argument that the Appellate Division reversed the trial court by a *666 three-to-two vole on the question of the substantiality of the violation, the facts and this ease are entirely different. We must examine the facts and evaluate the signs in question here in the light of all the factors outlined above.
The facts are as follows: A lease was entered into in October, 1964 for a period of five years, the term to begin February 1, 1965, with an option for an additional five years at a rental of $16,000 per year, for use as a ladies’ dress shop. This is a 25-story office building on Madison Avenue formerly occupied by Columbia Broadcasting System. The tenant entered into possession in March, 1965, after spending a considerable sum in making the store suitable for its intended purpose of conducting1 a ladies’ wearing apparel retail establishment. Some time later, in May or June, the landlord embarked on a project of “ gutting the building” in order to accomplish a $4,000,000 renovation. Demolition, alteration and construction were commenced and carried on into January, when the tenant placed the signs in question in the window. Scaffolding had been erected in and about the entire building with the exception of that portion immediately in front of the tenant’s store, and the tenant found herself surrounded by constant pounding, dirt and noise resulting from demolition work and later by construction work. There were charges and countercharges with respect to lack of heat and failure of the tenant to permit landlord to make certain repairs, all of which became the subject matter of litigation in other courts. The tenant claims that after being left without heat on numerous occasions, with freezing temperatures, she felt impelled by these conditions and loss of business to place the signs in question in the window on January 19.
Placing the signs in the window in violation of the lease, without obtaining the landlord’s consent, was a rash, ill-advised act, and the language used was in bad taste. The landlord was justified in objecting to the signs and in deeming the verbiage disturbing. This court cannot condone any wrongdoing, no matter how minor in nature. Assuming the landlord had committed the wrong in failing to furnish heat, the tenant was not justified in retaliating with a further wrong. Two wrongs do not make a right. In fairness to the tenant, it must be pointed out that, at the court’s suggestion, immediately after the close of taking testimony on February 17 and the last adjournment of the trial, the tenant removed the signs in question from the window.
The court must consider that the defect was cured, that a long-term lease is involved, and that injunctive relief could have been sought. The other factors to be considered here are the outward appearance of the building at the time the tenant placed *667 the signs in the window, the numerous other signs on the outside of the building not placed there by the tenant, the scaffolding, and the generally chaotic condition of the building.
In the light of all these factors and the physical facts and surrounding circumstances, it would indeed be most difficult for the court to find that the placing of the signs in the window without the consent of the landlord was so substantial a violation as to justify the eviction of the tenant and the forfeiture of a long-term tenancy, particularly in view of the fact that injunctive relief in equity could have been obtained much more quickly and the defect was cured before the case was closed (albeit as the result of a gentle reminder by the court). The petition is therefore dismissed.
In passing, the court cannot agree with the contention of tenant’s counsel that the landlord waived its rights to object to the signs in question on the ground that it failed to object to previous signs. Failure to object to an earlier sign which was innocuous does not constitute a waiver of the provisions of paragraph 38 as to all future signs which may be offensive or objectionable. The doctrine of “once a waiver always a waiver ’’ as set forth in Sol Apfel, Inc. v. Kocher (61 N. Y. S. 2d 508, affd. 272 App. Div. 758) is not applicable to a case involving signs placed in violation of lease provisions. Furthermore, should the landlord find it necessary in the future to bring another holdover proceeding in the event the tenant persists in continuing to violate paragraph 38 or should the proceeding bo based on continued further acts and conduct which spell out and evince a pattern designed to harass the landlord, then in that event the landlord would be entitled to use as evidence in that proceeding the finding of this court that the tenant did violate paragraph 38 by placing signs in the window without the consent of the landlord.